1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

10

ROBERT C. BEERS,

CASE NO. 2:15-CV-01084-RSL-DWC

11

Plaintiff,

REPORT AND RECOMMENDATION
ON PLAINTIFF'S COMPLAINT

12

v.

13

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

Noting Date: May 27, 2016

14

Defendant.

15

16       The District Court has referred this action, filed pursuant to 42 U.S.C. § 405(g), to United

17    States Magistrate Judge David W. Christel. Plaintiff seeks judicial review of the denial of

18    Plaintiff's applications for Disability Insurance Benefits ("DIB") and Supplemental Security

19    Income ("SSI") benefits.

20       The Court concludes the Administrative Law Judge ("ALJ") did not err in evaluating the

21    opinions of two examining psychologists, two state agency medical consultants, and three

22    advanced registered nurse practitioners ("ARNP"). Further, the ALJ did not err by finding

23    Plaintiff's bipolar disorder not severe at Step Two of the sequential evaluation, nor did the ALJ

24

err in evaluating Plaintiff's credibility.  Therefore, the undersigned recommends the entry of an

Order affirming the ALJ's decision pursuant to sentence four of 42 U.S.C. § 405(g).

### PROCEDURAL& FACTUAL HISTORY

On July 10, 2012, Plaintiff filed applications for DIB and SSI. *See* Dkt. 9, Administrative

Record ("AR") 196-208. Plaintiff alleges he became disabled due to a prior history of bilateral

hip replacement, neck pain arising out of an automobile accident, chronic foot problems, gout,

and bipolar disorder. *See* AR 264.  Plaintiff's applications were denied upon initial

administrative review and on reconsideration. *See* AR 71-72, 95-96. A hearing was held before

ALJ Mary Gallagher Dilley on September 10, 2013, at which Plaintiff, represented by counsel,

appeared and testified. *See* AR 34.

On January 27, 2014, the ALJ found Plaintiff was not disabled within the meaning of

Sections 216(i), 223(d), and 1614(a)(3)(A) of the Social Security Act. AR 26. Plaintiff's request

for review of the ALJ's decision was denied by the Appeals Council on April 29, 2015, making

that decision the final decision of the Commissioner of Social Security (the "Commissioner").

*See* AR 1, 20 C.F.R. § 404.981, § 416.1481. On July 6, 2015, Plaintiff filed a complaint in this

Court seeking judicial review of the Commissioner's final decision.

Plaintiff argues the denial of benefits should be reversed and remanded for further

proceedings, because the ALJ failed to: 1) find Plaintiff's bipolar disorder to be a severe

impairment at Step Two of the sequential evaluation; 2) properly evaluate the medical opinion

evidence from two of Plaintiff's examining psychologists, two state agency medical consultants,

and three of Plaintiff's treating and examining ARNPs; and 3) offer specific, clear, and

convincing reasons, supported by substantial evidence, for finding Plaintiff less than fully

credible. Dkt. 11, pp. 1-2.

1

## **STANDARD OF REVIEW**

2      Under 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social

3   security benefits only if the ALJ's findings are based on legal error or not supported by

4   substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th

5   Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)). "Substantial evidence" is

6   more than a scintilla, less than a preponderance, and is such "'relevant evidence as a reasonable

7   mind might accept as adequate to support a conclusion.'" *Magallanes v. Bowen*, 881 F.2d 747,

8   750 (9th Cir. 1989) (*quoting Davis v. Heckler*, 868 F.2d 323, 325-26 (9th Cir. 1989)).

9

## **DISCUSSION**

10  I.   Whether the ALJ Erred by Failing to Consider Plaintiff's Bipolar Disorder to be a
          Severe Impairment at Step Two of the Sequential Evaluation

11

       **A.  Standard**

12

13     At Step Two of the sequential evaluation, the ALJ is required to determine whether the

14  claimant has "a medically severe impairment or combination of impairments." *Smolen v. Chater*,

15  80 F.3d 1273, 1289-90 (9th Cir. 1996) (internal citation omitted); 20 C.F.R. §§

16  404.1520(a)(4)(ii), 416.920(a)(4)(ii) (2015). Impairments must result "from anatomical,

17  physiological, or psychological abnormalities which can be shown by medically acceptable

18  clinical and laboratory diagnostic techniques." 20 C.F.R. § 416.908 (2010).

19     The Step Two inquiry, however, is merely a threshold determination as to whether a

20  claimant has raised a "prima facie case of a disability." *Hoopai v. Astrue*, 499 F.3d 1071, 1076

21  (9th Cir. 2007). *See also Smolen,* 80 F.3d at 1290 (noting the Step Two determination is a *de*

22  *minimis* screening device used to dispose of groundless claims). "Ample authority cautions

23  against a determination of nondisability at step two." *Ortiz v. Commissioner of Social Sec.*, 425

24  Fed.Appx. 653, 655 (9th Cir. 2011) (*citing Bowen v. Yuckert*, 482 U.S. 137, 153 (1987); *Webb v.*

*Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005), *Smolen*, 80 F.3d at 1290. An impairment or combination of impairments may be found "not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." *Smolen*, 80 F.3d at 1290.

## B.  Application of Standard

The ALJ found Plaintiff had five severe impairments: (1) history of spinous process fracture of the cervical spine; (2) history of bilateral vascular necrosis and hip replacement; (3) discogenic low back pain; (4) gouty arthritis flares; and (5) history of metatersalgia bilaterally. AR 18. Plaintiff contends the ALJ should have also included Plaintiff's bipolar disorder as a severe impairment. However, the ALJ found:

> The claimant's medically determinable mental impairments of polysubstance abuse in full remission during the period at issue and bipolar disorder, considered singly and in combination, do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and are therefore non-severe. As will be discussed more fully below, the claimant's history of substance addiction, which is mentioned throughout the record, affects his overall credibility. The undersigned accepts however that he has sustained sobriety, and that his polysubstance abuse in full remission does not significantly affect his functional abilities under SSR 13-2p. Without ongoing substance abuse the claimant's bipolar symptoms are found nonsevere.

AR 18. Plaintiff argues this finding was unsupported by substantial evidence. The Court disagrees.

Contrary to Plaintiff's argument, the ALJ supported this finding by citing to relevant evidence and considering the functional areas set out in Paragraph B of Section 12.00(C) of the Listing of Impairments, 20 C.F.R. Part 404, Subpt. P, App. 1. AR 18-19. Under Social Security Regulations, the severity of mental impairments is assessed using four functional areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. 20 C.F.R. Part 404, Subpt. P, App. 1, at 12.00(C). If the Social

Security Administration ("SSA") rates the degree of a claimant's limitation "in the first three functional areas as 'none' or 'mild' and 'none' in the fourth area, [the SSA] will generally conclude that your impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in your ability to do basic work activities." 20 C.F.R. §§ 404.1520a(d)(1); 416.920a(d)(1).

The ALJ found Plaintiff's mental impairments did not lead to: (1) any limitations in Plaintiff's activities of daily living; (2) no more than mild limitations in his social functioning; (3) no more than mild limitations in his concentration, persistence, and pace; and (4) any episodes of decompensation which have been of extended duration. AR 18-19. In making these findings, the ALJ cited to function reports and medical records reflecting Plaintiff had no difficulties arising out of his mental impairments with his ability to dress, bathe, shave, eat, use the restroom, prepare food, complete routine housework, and walk for exercise. AR 311-13. As noted by the ALJ, these reports also indicate Plaintiff has little, if any, difficulty interacting with authority figures, has developed personal relationships with his family and a girlfriend, has attended social functions, does not require reminders to take medicine or pay bills, and he engage in his hobbies up to two hours a day. AR 311-17, 533, 578. Further, as discussed in Section II, below, the ALJ properly evaluated the medical opinion evidence from Dr. Czysz, Dr. Widlan, Dr. van Dam, and Dr. Regets, and properly discounted their opinions concerning the severity of Plaintiff's bipolar disorder. The ALJ supported his findings at Step Two with substantial evidence, and did not err by finding Plaintiff's bipolar disorder to be not severe.

II.     <u>Whether the ALJ Properly Evaluated the Medical Opinion Evidence.</u>

**A.  Standard**

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician or psychologist. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (*citing Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988); *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990)). However, "[i]n order to discount the opinion of an examining physician in favor of the opinion of a nonexamining medical advisor, the ALJ must set forth specific, *legitimate* reasons that are supported by substantial evidence in the record." *Nguyen v. Chater*, 100 F.3d 1462, 1466 (9th Cir. 1996) (*citing Lester,* 81 F.3d at 831). The ALJ can accomplish this by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (*citing Magallanes*, 881 F.2d at 751).

Nurse practitioners and therapists are considered "other sources," rather than "acceptable medical sources" under Social Security regulations. *See* 20 C.F.R. §§ 404.1513(d)(1) & (3). Thus, the ALJ only needs to provide arguably germane reasons to reject their testimony. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012); *Turner v. Comm'r of Soc. Sec.,* 613 F.3d 1217, 1224 (9th Cir. 2010); *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). 20 C.F.R. § 404.1513(d). *See also* Social Security Ruling ("SSR") 06-03p, at *5, *available at* 2006 WL 2329939; *Garrison v. Colvin*, 759 F.3d 995, 1013-14 (9th Cir. 2014). Though an ALJ may give more weight to an "acceptable medical source" over an "other source," an ALJ "may not completely disregard an opinion from an 'other source' merely *because* it is not an 'acceptable medical source.'" *Sanchez v. Commissioner of Soc. Sec. Admin.*, 2014 WL 4678282, *3 (E.D. Cal. 2014) (emphasis added)

1  (*citing* 20 C.F.R. § 416.927; SSR 06-03p, at *4, *available at* 2006 WL 2329939; *Gomez v.*

2  *Chater*, 74 F.3d 967, 970-71 (9th Cir. 1996)).

3         In addition, the ALJ must explain why the ALJ's own interpretations, rather than those of

4  the doctors, are correct. *Reddick*, 157 F.3d at 725 (*citing Embrey,* 849 F.2d at 421-22). The ALJ

5  "may not reject 'significant probative evidence' without explanation." *Flores v. Shalala*, 49 F.3d

6  562, 570-71 (9th Cir. 1995) (*quoting Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984)).

7  The "ALJ's written decision must state reasons for disregarding [such] evidence." *Flores*, 49

8  F.3d at 571.

9         **B.  Application of Standard**

10              1. *Dr. James Czysz, Psy.D.*

11        Dr. Czysz examined Plaintiff on February 22, 2012. AR 618. During the examination, Dr.

12  Czysz observed anxiety, mood lability and emotional extremes, and documented Plaintiff's

13  reports of racing thoughts, grandiosity, low self esteem, and obsessive-compulsive behaviors.

14  AR 618. On mental status examination, Dr. Czysz documented Plaintiff's labile mood, but

15  otherwise Plaintiff's performance was within normal limits. AR 620-21. Dr. Czysz also

16  administered the Personality Assessment Inventory ("PAI"), a self-report form completed by

17  Plaintiff. AR 621. Though Dr. Czysz noted Plaintiff's PAI responses suggested Plaintiff was

18  engaging in negative impression management, Dr. Czysz ultimately concluded the PAI results

19  are consistent with high levels of anxiety, perfectionism, "a significant depressive experience,"

20  and a thought process marked by "confusion, indecision, distractability, and difficulty

21  concentrating," as well as elevated and variable mood. AR 621-22.

22        The ALJ gave little weight to Dr. Czysz's opinion for the following two reasons:

23        [1][T]here is no indication that either of these examiners[, Dr. Czysz and Dr.
           Widlan,] reviewed any evidence of record except for the claimant's own

24

subjective statements; a problem, for as discussed above, the claimant is less than fully credible. [AR 618-34]. [2] The opinions of both these physicians also conflicts with their own testing as discussed above, i.e., the claimant performs serial 7s, follows simple commands, and can spell a simple world [sic], among other basic tasks. For these reasons, the opinions from Dr. Czysz and Dr. Widlan are not assigned significant probative value.

AR 23 (numbering added). Plaintiff argues these were not specific and legitimate reasons to discount Dr. Czysz's opinion. The Court disagrees.

At the outset, Plaintiff argues the ALJ erred by combining his analysis of Dr. Czysz and Dr. Widlan's opinions rather than discussing each doctor separately. However, Plaintiff does not cite, nor can the Court find, any authority to support this proposition. The ALJ is required to discuss every medical opinion in the record; however, SSA regulations do not specify the *manner* in which all opinions must be discussed. *See* 20 C.F.R. 416.927(c). Similarly, Ninth Circuit case law requires the ALJ to articulate "*specific*, legitimate reasons" supported by substantial evidence in the record when rejecting an examining physician or psychologist's opinions. *Nguyen v. Chater*, 100 F.3d 1462, 1466 (9th Cir. 1996) (emphasis added) (*citing Lester,* 81 F.3d at 831). As with Social Security regulations, the Ninth Circuit requires the ALJ's *reasons* to be specific, however the exact manner in which those reasons are discussed is not delineated. Here, though the ALJ combined his analysis of two doctors into one paragraph, the ALJ clearly indicates he considered the opinions of both Dr. Czysz and Dr. Widlan, and found two reasons applied equally well to give both psychologists' opinions little weight. AR 23. Plaintiff has failed to show how this is error.

On the merits, the ALJ's first reason for discounting Dr. Czysz's opinion—he did not review any evidence of record and must have relied entirely on Plaintiff's discredited subjective complaints—was not supported by substantial evidence. An "ALJ may reject a treating physician's opinion if it is based 'to a large extent' on a claimant's self-reports that have been

properly discounted as incredible." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). However, "when an opinion is not more heavily based on a patient's self-reports than on clinical observations, there is no evidentiary basis for rejecting the opinion." *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014). Here, though Dr. Czysz documented Plaintiff's subjective complaints, he also documented his own observations of Plaintiff's labile mood and anxiety. AR 618-20. Contrary to the ALJ's claim, Dr. Czysz indicated he reviewed Plaintiff's records in assessing Plaintiff's GAF score. AR 619. Dr. Czysz also administered a mental status examination and PAI. *Blessing v. Astrue*, 2013 WL 316153, *7 (W.D. Wash. 2013) ("Like the physical examination, the Mental Status Examination is termed the *objective* portion of the patient evaluation.") (*quoting* Paula T. Trzepacz and Robert W. Baker, The Psychiatric Mental Status Examination, 3-4 (Oxford University Press 1993)). *See also Gehrman v. Colvin*, 2016 WL 792039, *4 (W.D. Wash. 2016). The ALJ incorrectly assumed Dr. Czysz's opinion was based entirely on Plaintiff's subjective complaints.

However, the ALJ's second reason for discounting Dr. Czysz's opinion—it was *inconsistent* with Dr. Czysz's objective testing—was a specific and legitimate reason, supported by substantial evidence, for rejecting Dr. Czysz's opinion. Though Dr. Czysz opined it was unlikely Plaintiff "would be successful in any competitive employment setting," Plaintiff was able to complete serial 7's, had an intact fund of knowledge, had a generally linear and well-organized thought process, and was oriented to all spheres. AR 619-20. The ALJ could reasonably interpret Plaintiff's performance on mental status examination as inconsistent with Dr. Czysz's opined limitations. *See Morgan v. Commissioner of Soc. Sec. Admin.*, 169 F.3d 595, 601-02 (9th Cir. 1999); *Tommasetti*, 533 F.3d at 1038. Further, An ALJ may properly discount an examining psychologist's opinion when it is brief, conclusory, and inadequately supported by

1   clinical findings or by the record as a whole, and the ALJ reasonably did so here. *Batson v.*

2   *Comm'r, Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (*citing Tonapetyan*, 242 F.3d at

3   1149); *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002). Thus, the ALJ did not err by

4   giving less than full weight to Dr. Czysz's opinions.

5                    2. *Dr. David Widlan*, *Ph.D.*

6          Dr. Widlan examined Plaintiff on December 21, 2012. AR 625. On mental status

7   examination, Plaintiff presented a flat affect, but was otherwise within normal limits. AR 628-29.

8   Dr. Widlan also administered the Beck Depression Inventory- II, on which Plaintiff scored in the

9   moderate range, and the Beck Anxiety Inventory, on which Plaintiff scored in the severe range.

10  AR 628. Dr. Widlan diagnosed Plaintiff with bipolar II disorder, panic disorder without

11  agoraphobia, alcohol dependency, early full remission, and polysubstance abuse, early full

12  remission. AR 626. As a result of these diagnoses, Dr. Widlan opined Plaintiff would have

13  marked limitations in a range of areas, including in his ability to: understand, remember, and

14  persist in tasks by following detailed instructions; perform activities within a schedule, maintain

15  regular attendance, and be punctual within customary tolerances without special supervision;

16  adapt to changes in a work setting; communicate and perform effectively in a work setting, and

17  complete a normal work day and work week without interruptions from psychologically based

18  symptoms. AR 627. Dr. Widlan also opined Plaintiff would have moderate limitations in his

19  ability to: understand, remember, and persist in tasks by following short and simple instructions;

20  learn new tasks; and perform routine tasks without special supervision. AR 627.

21         As discussed above, the ALJ gave little weight to Dr. Widlan's opinions for the same two

22  reasons he rejected Dr. Czysz's opinions: the opinion was based entirely on Plaintiff's subjective

23  statements, and Dr. Widlan's opinion conflicts with his objective testing. AR 23. As with Dr.

24

REPORT AND RECOMMENDATION
ON PLAINTFF'S COMPLAINT- 10

Czysz's opinion, the ALJ erred in assuming Dr. Widlan's opinion was based entirely on Plaintiff's subjective symptom testimony. AR 628-34. *See Ghanim*, 763 F.3d at 1162. However, as with Dr. Czysz, the mental status examination conducted by Dr. Widlan reflected Plaintiff could perform serial 7's, spell "world" backwards, was logical, organized, and coherent, had an adequate fund of knowledge and could interpret proverbs, among other normal findings. AR 628-29. The ALJ could reasonably interpret Plaintiff's performance on Dr. Widlan's mental status examination as inconsistent with Dr. Widlan's opined limitations. AR 628-29. *Morgan*, 169 F.3d at 601-02; *Tommasetti*, 533 F.3d at 1038. Thus, the ALJ did not err by giving Dr. Widlan's opinion little weight.

### 3. *Dr. Carla van Dam, Ph.D. & Michael Regets, Ph.D.*

State Agency Medical Consultants Dr. van Dam and Dr. Regets reviewed Plaintiff's medical records on his initial application and on reconsideration. AR 80-81, 104-05. Both doctors opined Plaintiff would have moderate limitations in his concentration, persistence and pace, and that Plaintiff's affective disorders constituted a severe impairment. AR 76, 80, 101, 105.  The ALJ gave some weight to Dr. van Dam and Dr. Regets' opinions, but gave lesser weight to the portions of their opinions that the claimant has a moderate limitation with maintaining his concentration, persistence, and pace, for the following two reasons:

> [1][T]his [opined limitation] conflicts with the record. During his mental status exam with James Czysz, Psy.D., in February 2012, the claimant was 5/5 on serial 7s testing, spelled, "WORLD" correctly backward, and followed a 3-step instruction. [AR 620-21]. [2] As outlined above in Finding 3 the claimant does not need any special reminders to take care of his personal needs and/or grooming or take his medicine [AR 283]. He handles money adequately, and pursues his hobbies of reading, watching television, painting, photography, and using the computer up to 2 hours a day. [AR 314-15].

AR 23 (numbering added). Plaintiff argues the ALJ erred by discounting Dr. van Dam and Dr. Regets' conclusion Plaintiff's bipolar disorder was a severe impairment.

1        As discussed above, the ALJ did not err by discounting Dr. Czysz's opinion due to

2   inconsistencies with his mental status examination findings. Further, Plaintiff's performance on

3   serial 7s testing, ability to spell "world" forwards and back, and following instructions are the

4   recognized psychological tests for concentration, persistence, and pace. *See* 20 C.F.R. Pt. 404,

5   subpt. P, app 1, at 12.00(C)(3). The fact Plaintiff's performance on these tests was within normal

6   limits is inconsistent with Dr. van Dam and Dr. Regets' opinion Plaintiff would have moderate

7   limitations in concentration, persistence, and pace.  Inconsistency between the medical evidence

8   of record and Dr. van Dam and Dr. Regets' opinions is a specific and legitimate reason for

9   discounting the opinions, and the ALJ did not err by doing so here. *Batson*, 359 F.3d at 1195

10  (*citing Tonapetyan*, 242 F.3d at 1149); *Thomas*, 278 F.3d at 957.

11                    4.   *Other Medical Source Evidence*

12       The administrative record includes opinions from three ARNP's concerning Plaintiff's

13  limitations.

14       On February 6, 2012, Sau Mui Chan-Goh, ARNP examined Plaintiff and completed a

15  Washington State Department of Social and Health Services ("DSHS") Physical Incapacity

16  Evaluation form. AR 613. During her examination, Ms. Chan-Goh documented reduced range of

17  motion bilaterally in Plaintiff's back, neck, hips, and knees. AR 615-16. Ms. Chan-Goh opined

18  Plaintiff would have postural restrictions and impaired work function. AR 613. More

19  specifically, Ms. Chan-Goh opined Plaintiff would be able to sit for most of the day with brief

20  periods of walking or standing, but would not be able to stand for six hours in an 8 hour work

21  day, sit for prolonged periods with occasional pushing and pulling of arm or leg controls, and

22  would be unable to lift or carry. AR 613.

23

24

1        On January 4, 2013, Sonya Starr, ARNP examined Plaintiff and completed a DSHS

2  Physical Functional Evaluation form. AR 604. During her examination, Ms. Starr also

3  documented reduced range of motion bilaterally in Plaintiff's back, neck, hips, and knees. AR

4  607-08. In addition, Ms. Starr documented reduced range of motion in Plaintiff's shoulders. AR

5  607-08. Ms. Starr opined Plaintiff would have marked limitations in his ability to sit, stand, walk,

6  lift, carry, push, pull, reach, and crouch. AR 605. Ms. Starr also opined Plaintiff would be unable

7  to meet the demands of even sedentary work. AR 606.

8        On September 9, 2013, Katherine Avery, ARNP drafted a letter summarizing Plaintiff's

9  medical and treatment history, and indicating she has treated Plaintiff since February, 2002. AR

10  635. Ms. Avery opined Plaintiff would walk with a limp, experience high levels of pain after

11  sitting or standing for two hours at a time, and would have difficulty lifting anything over ten

12  pounds overhead, and would be unable to lift any weight over his head regularly. AR 635.

13  Further, Ms. Avery opined Plaintiff's bipolar disorder would lead to difficulty working and

14  functioning in stressful environments. AR 635.

15        The ALJ gave little weigh to the opinions of Ms. Chan-Goh, Ms. Starr, and Ms. Avery,

16  for three reasons:

17      [1] [N]one are acceptable medical sources under 20 CFR 404.1513(a) and

18      416.913(a), and [2] the opinions from Nurse Avery and Nurse Starr infringe on an issue reserved to the Commissioner under Social Security Ruling (SSR) 96-5p. [AR 18F/3, 11; 20F/1]. [3] Additionally, none of these opinions assign

19      the claimant an actual residual functional capacity assessment, that specifically addresses the most that he can do in all functional areas, i.e., sitting, standing,

20      walking, lifting, carrying, posturals, environmental, etc.

21  AR 24 (numbering added). Defendant concedes two of these reasons—the opinions infringe on

22  an issue reserved to the Commissioner and the opinions do not assign an actual residual

23  functional capacity assessment—are not germane reasons to reject Ms. Chan-Goh, Ms. Starr, and

24

1   Ms. Avery's opinions. Dkt. 14, p. 14. However, Defendant argues the ALJ's remaining reason—

2   Ms. Starr, Ms. Chan-Goh, and Ms. Avery are not "acceptable medical sources"—is a germane

3   reason. The Court disagrees.

4          The fact Ms. Chan-Goh, Ms. Starr, and Ms. Avery, are not "acceptable medical

5   source[s]" does not alter their status as "medical source[s]," nor does it prevent them from

6   providing evidence on the severity of Plaintiff's impairments or their effect on Plaintiff's ability

7   to work. *See* 20 C.F.R. § 404.1513(d)(1). The testimony of other medical sources, as with the

8   testimony of other lay witnesses, "is competent evidence that an ALJ must take into account . . .

9   ." *Lewis*, 236 F.3d at 511. *See also* SSR 06-03p, at *5, *available at* 2006 WL 2329939. Under

10  some circumstances, the SSA can even "give more weight to the opinion of a medical source

11  who is not an 'acceptable medical source'" than to a treating physician. SSR 06-03p, at *5,

12  *available at* 2006 WL 2329939. The ALJ's decision to disregard Ms. Starr, Ms. Chan-Goh and

13  Ms. Avery's opinions simply because they were not "acceptable medical sources" is contrary to

14  the SSA's regulations and rulings, and is not a germane reason to discount their opinions. 20

15  C.F.R. § 404.1513(d)(1); SSR 06-03p, at *4, *available at* 2006 WL 2329939.

16         Defendant argues the ALJ actually discounted Ms. Chan-Goh, Ms. Starr, and Ms. Avery

17  because, as "other sources," their opinions were entitled to less weight than conflicting opinions

18  from two acceptable medical sources, Dr. Hale and Dr. Rubio. Dkt. 14, p. 14, AR 23, 76, 78-80,

19  100, 103-04, 605-06, 613, 635. However, a reviewing court "cannot affirm the decision of an

20  agency on a ground that the agency did not invoke in making its decision." *Pinto v. Massanari*,

21  249 F.3d 840, 847 (9th Cir. 2001).  *See also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219,

22  1225-26 (9th Cir. 2009). While the ALJ certainly *could* have elevated the contradictory opinions

23  of an acceptable medical source over that of other medical sources, the ALJ did not do so. AR

24

REPORT AND RECOMMENDATION
ON PLAINTFF'S COMPLAINT- 14

24. *See Sanchez*, 2014 WL 4678282, at *5. Reading such reasoning into the ALJ's written

decision would be precisely the sort of "*post hoc* rationalization" prohibited by well-established

law, and the Court will not do so here. *Bray*, 554 F.3d at 1225-26.

However, Defendant, citing *Molina v. Astrue*, also argues any error in failing to properly

evaluate Ms. Chan-Goh, Ms. Starr, and Ms. Avery's opined limitations was harmless, as the ALJ

offered clear and convincing reasons to discount Plaintiff's credibility concerning the same

limitations. Dkt. 14, p. 14. *Molina,* 674 F.3d at 1117. Specifically, Defendant argues these

opinions are contradicted by Plaintiff's activities of daily living and the objective medical

evidence concerning Plaintiff's mental impairments. Dkt. 14, p. 14.

An ALJ's failure to properly discount a lay witness' testimony is not per se harmful error

"[w]here lay witness testimony does not describe any limitations not already described by the

claimant, and the ALJ's well-supported reasons for rejecting the claimant's testimony apply

equally well to the lay witness testimony." *Molina,* 674 F.3d at 1117. In *Molina*, the Court found

the lay witness testimony—which had otherwise been improperly discredited by the ALJ—did

not describe any limitations beyond what the claimant had testified to, and the ALJ had offered

specific, clear and convincing reasons for discounting the claimant's testimony concerning those

limitations. *Id.* at 1122.

Here, Ms. Chan-Goh, Ms. Starr, and Ms. Avery, did not opine to any limitations different

from those testified to by Plaintiff. *Compare* AR 604-17, 635 *with* AR 42-63, 311-13. Further,

though the ALJ failed to properly discount the opinions of Ms. Chan-Goh, Ms. Starr, and Ms.

Avery, the ALJ discounted Plaintiff's testimony concerning the degree and severity of his

limitations, in part, as being inconsistent with the objective medical evidence. *See* Section III,

*infra*. Specifically, the ALJ cited medical records indicating Plaintiff had good range of motion

1    in his hands, good ankle range of motion and hip extension, responded well to non-narcotic pain

2    medication, and was no longer a candidate for surgery.  AR 519, 523, 547, 557, 579, 595-96,

3    638-39.  As with Plaintiff's testimony, these records are inconsistent with the more limited range

4    of motion findings and opined limitations offered by Ms. Chan-Goh, Ms. Starr, and Ms. Avery,

5    and inconsistency between another medical source's opinion and the record as a whole is a

6    germane reason to discount their opinions. *See Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001)

7    (An ALJ may discount lay testimony which "conflicts with medical evidence"). Because the

8    Ninth Circuit considers other medical sources to be lay witnesses, and because the inconsistency

9    between the objective medical evidence and Plaintiff's testimony was a well-supported reason

10   which applies equally well to Ms. Chan-Goh, Ms. Starr, and Ms. Avery's opinions, the ALJ's

11   error was harmless. *See Molina*, 674 F.3d at 1122. *See also Turner*, 613 F.3d at 1224; 20 C.F.R.

12   §§ 404.1513(d) & 416.913(d)

13       III.    Whether the ALJ Provided Specific, Clear, and Convincing Reasons, Supported by
                 Substantial Evidence, for Finding Plaintiff Not Fully Credible.

14

15              **A.  Standard**

16              If an ALJ finds a claimant has a medically determinable impairment which reasonably

17   could be expected to cause the claimant's symptoms, and there is no evidence of malingering, the

18   ALJ may reject the claimant's testimony only "by offering specific, clear and convincing

19   reasons." *Smolen*, 80 F.3d at 1284 (*citing Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir.1993)).

20   *See also Reddick*, 157 F.3d at 722. However, sole responsibility for resolving conflicting

21   testimony and questions of credibility lies with the ALJ. *Sample v. Schweiker*, 694 F.2d 639, 642

22   (9th Cir. 1999) (*citing Waters v. Gardner*, 452 F.2d 855, 858 n.7 (9th Cir. 1971); *Calhoun v.

23   Bailar*, 626 F.2d 145, 150 (9th Cir. 1980)). Where more than one rational interpretation

24   concerning a plaintiff's credibility can be drawn from substantial evidence in the record, a

1  district court may not second-guess the ALJ's credibility determinations. *Fair,* 885 F.2d at 604.

2  *See also Thomas*, 278 F.3d at 954 ("Where the evidence is susceptible to more than one rational

3  interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be

4  upheld."). In addition, the Court may not reverse a credibility determination where that

5  determination is based on contradictory or ambiguous evidence. *See Allen v. Heckler*, 749 F.2d

6  577, 579 (9th Cir. 1984). That some of the reasons for discrediting a claimant's testimony should

7  properly be discounted does not render the ALJ's determination invalid, as long as that

8  determination is supported by substantial evidence. *Tonapetyan* , 242 F.3d at 1148.

9          **B.  Application of Standard**

10         At the hearing, Plaintiff testified he was in constant, severe pain as a result of his neck

11  injury, bilateral hip replacement, and ongoing problems with his feet and ankles. AR 50-53, 57

12  61. Plaintiff also testified to symptoms arising out of his anxiety and bipolar disorder. AR 53-54.

13  As a result of these impairments, Plaintiff testified he has difficulty walking and standing to any

14  significant degree, periods of mania, panic attacks, and impaired judgment AR 51-52, 54-55, 58.

15  The ALJ found Plaintiff's medically determinable impairments could reasonably be expected to

16  cause the alleged symptoms, but found the claimant's statements concerning the "intensity,

17  persistence, and limiting effects of these symptoms are not entirely credible[.]" AR 21-22.

18  Plaintiff alleges all of the four reasons the ALJ identified for discounting his subjective symptom

19  testimony were not clear and convincing reasons, nor were they supported by substantial

20  evidence. The Court disagrees.

21         First, the ALJ found the objective medical evidence in the record contradicted Plaintiff's

22  testimony concerning the severity of Plaintiff's physical impairments. AR 22. This was proper.

23  *See Regennitter v. Comm'r, Soc. Sec. Admin.*, 166 F.3d 1294, 1297 (9th Cir. 1998). "While

24

subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects." *See Rollins*, 261 F.3d at 857 (citing 20 C.F.R. § 404.1529(c)(2)). Further, though an ALJ may not disregard a claimant's subjective symptom testimony because it is *unsupported* by objective medical evidence, an ALJ may discredit a claimant's testimony when it *contradicts* evidence in the record. *See Johnson v. Shalala,* 60 F.3d 1428, 1434 (9th Cir. 1995).

Here, the ALJ cited medical records reflecting Plaintiff had normal arm strength and sensation, and good range of motion through flexion and extension. AR 638-39. The ALJ also cited records indicating Plaintiff had good range of motion in his hands, normal knee flexion, ankle range of motion and hip extension, responded well to non-narcotic pain medication, and was no longer a candidate for surgery. AR 519, 523, 547, 557, 579, 595-96. Plaintiff cites several other records which reflect Plaintiff's condition is more severe than the ALJ found. However, faced with ambiguities in the record, the Court may not substitute its judgment for that of the ALJ. *Batson,* 359 F.3d at 1196. The Court's inquiry under these circumstances is limited to assessing whether the ALJ's interpretation of the evidence is rational; if so, the Court will not disturb the ALJ's findings. *See Thomas*, 278 F.3d at 954. Taken with the ALJ's other reasons for discounting Plaintiff's testimony, discussed below, the objective medical evidence constitutes a clear and convincing reason for the ALJ to find Plaintiff's physical impairments were less severe than alleged.

Second, the ALJ cites Plaintiff's inconsistent reporting of his history of substance use. AR 22.  For example, on February 27, 2012, Plaintiff indicated he had stopped using alcohol approximately eighteen months prior. AR 474. However, three weeks earlier, he reported

occasional use of ethyl alcohol. AR 469. An ALJ is allowed to consider "ordinary techniques of credibility evaluation," including the claimant's reputation for truthfulness and inconsistencies in Plaintiff's testimony. *See Smolen*, 80 F.3d at 1284. The ALJ did not err by relying on this inconsistency to find Plaintiff less than fully credible.

Third, the ALJ cited to Plaintiff's criminal history, specifically his conviction for a crime of dishonesty. AR 23. An ALJ may rely on a claimant's prior history of crimes of dishonesty to conclude Plaintiff has less motivation to truthfully report his symptoms, and the AL properly did so in this case. *See Hardisty v. Astrue*, 592 F.3d 1072, 1080 (9th Cir. 2010); *Carter v. Astrue*, 472 Fed.Appx. 550, 552 (9th Cir. 2012). *See also Simmons v. Massanari*, 264 F.3d 751, 756 (8th Cir. 2001); *Stewart v. Colvin*, 2014 WL 1355972, at *5 (D. Ariz. 2014); *Albidrez v. Astrue*, 504 F.Supp.2d 814, 822 (C.D. Cal. 2007).

Finally, the ALJ also cites Plaintiff's activities of daily living as a basis for discounting Plaintiff's complaints of pain and physical limitation. AR 22. However, unlike the ALJ's other reasons, Plaintiff's activities of daily living are not a clear and convincing reason to discount his testimony. "[T]he mere fact that a plaintiff has carried on certain daily activities . . . does not in any way detract from her credibility as to her overall disability." *Orn*, 495 F.3d at 639. To base an adverse credibility determination upon a claimant's activities of daily living, the ALJ must either explain how the claimant's activities are inconsistent with his or her testimony, or must explain how the activities of daily living meet "the threshold for transferable work skills." *Id. See also Fair*, 885 F.2d at 603 (holding an ALJ may properly base an adverse credibility finding on activities of daily living "if a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting").

1   Here, the ALJ concluded Plaintiff's testimony "that he has constant, severe pain that

2   limits his ability to reach over head as well as sit, stand, and/or walk," was contradicted by his

3   daily activities as he described them in one function report and in a physical therapy evaluation

4   note. AR 281-83, 311-13, 546. However, these records do not conflict with Plaintiff's testimony.

5   Plaintiff's function report reflects Plaintiff has difficulty putting on socks and shoes, has

6   difficulty squatting to get in and out of the tub, has difficulty lifting his arms to shave his head,

7   cannot perform any outdoor chores and only minimal indoor chores, and is only able to walk

8   "small distances with rest." AR 281-84, 311-14. Further, though the ALJ cites one physical

9   therapy record indicating Plaintiff's exercise program constitutes "walking," the very next page

10  of that treatment report reflects Plaintiff cannot stand for more than 30 minutes, cannot walk up

11  more than one flight of stairs, has to walk very carefully on uneven ground, and his symptoms

12  prevent him from walking for more than one quarter of a mile. AR 547. These reports are, in

13  fact, consistent with Plaintiff's testimony; therefore Plaintiff's activities do not constitute a

14  specific, clear, and convincing reason to reject his testimony. *See Garrison,* 759 F.3d at 1015-16;

15  *Esparza v. Colvin*, 631 Fed.Appx. 460, 462 (9th Cir. 2015). However, because the ALJ offered

16  other specific, clear and convincing reasons, supported by substantial evidence, for discounting

17  Plaintiff's testimony, this error is harmless. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533

18  F.3d 1155, 1162 (9th Cir. 2008).

19  ## CONCLUSION

20  Based on the above stated reasons and the relevant record, the undersigned finds the ALJ

21  did not err in finding Plaintiff was not disabled and recommends this matter be affirmed pursuant

22  to sentence four of 42 U.S.C. § 405(g).  The undersigned recommends judgment be entered for

23  Defendant and the case closed.

24

1    Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have

2   fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P.

3   6. Failure to file objections will result in a waiver of those objections for purposes of de novo

4   review by the district judge. *See* 28 U.S.C. § 636(b)(1)(C). Accommodating the time limit

5   imposed by Rule 72(b), the clerk is directed to set the matter for consideration on May 27, 2016,

6   as noted in the caption.

7    Dated this 11th day of May, 2016.

8

9                                 David W. Christel
                                  United States Magistrate Judge
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

REPORT AND RECOMMENDATION
ON PLAINTFF'S COMPLAINT- 21